LOLLA PERRY, ADMINISTRATRIX, APPELLANT AND CROSS-APPELLEE, v. IRA E. NEEL ET AL., APPELLEES AND CROSS-APPELLEES: L. H. CHENEY, ADMINISTRATOR, CROSS-APPELLANT.

FILED FEBRUARY 13, 1934. No. 28628.

*Butler & James* and *Perry, Van Pelt & Marti*, for appellant.

*L. H. Cheney*, for cross-appellant.

*Cordeal, Colfer & Russell*, contra.

Heard before GOOD AND EBERLY, JJ., and MESSMORE, RAPER and YEAGER, District Judges.

RAPER, District Judge.

This action was brought by plaintiff, Lolla Perry, as administratrix of the estate of Eliza Neel, to subject to the payment of a judgment for alimony rendered in favor of Eliza Neel against John R. Neel two tracts of land, one

of them being near the village of Bartley, a farm of 90 acres, which will be designated as the Bartley property; the other a farm of 232 acres near the town of Red Willow, and will be designated as the Red Willow property, both tracts being in Red Willow county.

In the first cause of action in her petition, plaintiff alleges that she is the duly qualified and acting administratrix with the will annexed of the estate of Eliza Neel; that, since this action was begun, John R. Neel died and said action was revived in the name of L. H. Cheney as his administrator; that on April 13, 1929, in the district court for Lancaster county, Nebraska, Eliza Neel recovered a judgment against John R. Neel in the sum of $4,000 as permanent alimony; that said judgment was revived in the name of plaintiff on the 20th day of June, 1930; that a transcript of said judgment was duly filed in the office of the clerk of the district court for Red Willow county on the 26th day of June, 1930; that execution was issued on said judgment which execution was returned unsatisfied on November 16, 1930, by the sheriff; and that said judgment is in full force and unpaid.

Plaintiff further alleges that, prior to October 20, 1924, the defendant John R. Neel was the sole owner (except the homestead right of Eliza Neel) of a property known as the "hospital property" in the village of Holbrook, Nebraska, and, on October 20, 1924, John R. Neel exchanged the "hospital property" for the 90-acre tract of land known as the Bartley property, and that, without the knowledge of Eliza Neel and without any consideration, John R. Neel caused said property to be conveyed to Ira E. Neel, and that said conveyance was made with the intent to hinder, delay, and defraud Eliza Neel in obtaining her marital rights; that, in fact, Ira E. Neel is not the owner of said land but only holds title thereto as trustee for John R. Neel.

The second cause of action alleges that, on January 1, 1921, John R. Neel was the owner of 232 acres of land designated as the Red Willow land; that this land was

conveyed to Ira E. Neel by John R. Neel and Eliza Neel, without consideration except two notes for $13,000 and $6,000, respectively, secured by real estate mortgages, and that these notes were dated February 21, 1921, one of which mortgages covered the Red Willow land and the other mortgage covering other land; that Eliza Neel, when she joined in said conveyance, was unaware of the fact that said conveyance was for the purpose of fraudulently converting said real estate into personal property, and that she joined in the conveyance only on the representation of Ira E. Neel that the notes and mortgages would remain in full force until they were paid; that thereafter, unknown to Eliza Neel, Ira E. Neel secured from John R. Neel releases of the said two mortgages; that said releases were without any consideration, and that, on or about December 29, 1921, defendants Ira E. Neel and W. Frank Neel, in order to deprive Eliza Neel of her distributive share under the law of descent, induced John R. Neel to cancel the mortgages of $19,000 under the agreement of Ira E. Neel and W. Frank Neel to pay interest only on the principal; that the consideration for the canceling of the indebtedness and releasing of the mortgages was inadequate and unconscionable and amounted to a fraud upon Eliza Neel and was done for the purpose of depriving Eliza Neel of her marital rights, and to evade the law of descent; that Eliza Neel was not a party to said transaction, had no knowledge thereof, did not assent thereto, but was led to believe that her marital rights had been protected. She prays that, as to the "Bartley property," Ira E. Neel be adjudged to hold it in trust for John R. Neel, and that the releases of the mortgages on the "Red Willow property" be canceled and set aside and Ira E. Neel adjudged to hold the property in trust for John R. Neel and required to account for all rents received while in possession of said properties, and that same be offset against any claim of Ira E. Neel against John R. Neel.

The answer to the first cause of action admits the judgment for alimony, the filing of the transcript and the issuance and return of execution thereon, and admits that, on October 20, 1924, John R. Neel held the record title to the Holbrook property, and that on said date he exchanged it for the Bartley property; and denies other allegations of the petition. Then, as to first cause of action, the answer alleges that, prior to September 16, 1910, one Penelope Neel owned certain property in Indianola, and that on that date she died intestate leaving as her only heirs John R. Neel, her husband, and Ira E. Neel and W. Frank Neel; that, on December 29, 1915, John R., Ira E., and W. Frank Neel joined in a conveyance of the Indianola property for the Holbrook property, title to which was taken in the name of John R. Neel, who was in fact owner only of an undivided one-third interest, Ira E. and W. Frank owning the remaining two-thirds; that, on October 20, 1924, John R. Neel, on behalf of himself and Ira E. and W. Frank Neel, exchanged the Holbrook property for the Bartley land, the consideration expressed in the exchange contract for the Holbrook property was $6,000, and for the Bartley land $9,000; and that Ira E. Neel furnished the money with which the difference, $3,000, was paid; that the deed for the Bartley property was duly filed for record in the office of the county clerk of Red Willow county on April 4, 1925, and became and ever since has been notice to Eliza Neel of the rights of Ira E. Neel therein; that, at the institution of this suit, more than 5 years had elapsed since the filing of said deed, and any right of action Eliza Neel had was barred by the statute of limitations.

The answer to the second cause of action alleges that, on January 1, 1921, John R. Neel was the owner of the Red Willow land; that the land did not yield sufficient income to properly maintain him and Eliza Neel; that, being indebted to Ira E. Neel in the sum of $1,000, he proposed that he and Eliza Neel should execute deed to Ira and the latter to execute mortgages aggregating $19,-

000, bearing interest at 6 per cent.; that, as a result of this suggestion, John R. Neel and Eliza Neel deeded the Red Willow property to Ira E. Neel for the expressed consideration of $20,000, and Ira E. Neel executed to John R. Neel the two mortgages for $13,000 and $6,000; that, on December 29, 1921, in consideration of the release of the two mortgages, John R. Neel and Ira E. and W. Frank Neel entered into a contract whereby W. Frank Neel and Ira E. Neel each agreed to pay to John R. Neel the sum of $50 a month as long as he lived; that, in consideration of the agreement made by W. Frank Neel, Ira E. Neel conveyed to W. Frank Neel certain real estate; that John R. Neel than executed releases of the two mortgages which were recorded in the office of the county clerk of Red Willow county, and these releases have ever since been notice to Eliza Neel, and that at the institution of this suit more than 10 years had elapsed, and that any right of action Eliza Neel had was barred by the statute of limitations. The answer does not ask for affirmative relief, but prays that plaintiff's action be dismissed.

Plaintiff for reply denies the allegations of the answer, except admissions, and alleges that, at the time of the marriage of John R. Neel and Eliza Neel, John R. Neel owned the Red Willow land of the then value of $20,000, and other real estate and personal property of the value of $6,000; that John R. Neel had a homestead interest in the Indianola property, and the value of the property did not exceed $2,000; that Ira E. and W. Frank Neel released and conveyed all their rights to said property, and any cause of action which Ira E. and W. Frank Neel had therein was barred by the statute of limitations prior to the sale of the Holbrook property; that Ira E. Neel is estopped from claiming that the value of the Holbrook property was less than $6,000; that the title to the Bartley land was placed in the name of Ira E. Neel was concealed from Eliza Neel; that, at the time the Bartley land was acquired, Ira E. Neel held title to the Red Willow

land but had paid no part of the consideration except $1,000, and alleges that any sum claimed to have been advanced to John R. Neel should be applied on indebtedness owing by Ira E. Neel to John R. Neel.

L. H. Cheney, the administrator of the estate of John R. Neel, filed an answer and reply in which he substantially incorporates the contentions of plaintiff, and prays the court to decree that the lands belonged to John R. Neel at his death.

The trial court found that, at the commencement of the action, John R. Neel was the owner of the "Bartley property," subject to an equitable lien in favor of Ira E. Neel in the nature of a mortgage for money advanced on purchase price, and interest thereon, and for the payment of a mortgage of $1,000 and interest, and for taxes paid $335.93, amounting in the aggregate to $5,036.56; that Ira E. Neel be charged with the rents from 1928 to 1931, at $225 a year, which with interest to date of decree was $630.74, leaving a balance due Ira E. Neel of $4,405.82. The court dismissed plaintiff's second cause of action.

At the outset, in considering the evidence, we are met with the competency of much of the testimony. The trial judge overruled all the objections and apparently admitted all that either side offered, with the statement that he would consider only what was competent, but he has not given any indication in his findings as to what, if any, he rejected.

The first one of these questions relates to the offered testimony given by John R. Neel at the trial of the divorce action. Objection was made that it was immaterial because it was taken in an action in which the defendants in this action were not parties. This objection is not sufficient to exclude that testimony. Transcript of the testimony of Eliza Neel given in the divorce action was received without objection. The testimony of Lolla Perry and Ada Burton is in depositions, and it is not certain whether the objections to parts of their evidence were made at the time of the trial or at the time the deposi-

tions were taken. If the objections as to their competency under section 20-1202, Comp. St. 1929, were first made at the trial, the objections were unavailing. If made at time depositions were taken, their testimony was inadmissible in part. There are very few statements in Lolla Perry's deposition as to conversation with John R. Neel that are material. The appellant claims that, inasmuch as Ada Burton is the sole beneficiary under her mother's will, Lolla Perry, as executrix, is not barred from testifying as to conversations with John R. Neel, but it will be unnecessary to determine that. As to Ada Burton's testimony, appellees in their brief claim that her testimony was improperly received. This would be true if proper objection had been made, but only in a few instances were such objections interposed.

Ira E. Neel's testimony was objected to under section 20-1202, Comp. St. 1929, but, as many of the matters covered in his testimony had been offered by plaintiff, much of his evidence was admissible. *Kroncke v. Madsen,* 56 Neb. 609; *Bangs v. Gray,* 60 Neb. 457; *Dickenson v. Columbus State Bank,* 71 Neb. 260.

L. H. Cheney, the administrator of the estate of John R. Neel, objected to the testimony of Ira E. Neel. John R. Neel was made a party defendant but died after the case was begun. It is not disclosed whether he was served with a summons before his death. Cheney, administrator, filed an answer to plaintiff's petition, alleging in substance the same cause of action as that of plaintiff. John R. Neel was not a necessary party, and it is doubtful if his administrator is. Cheney did not object to the testimony offered by plaintiff as to the transactions between John R. Neel and his son Ira, and he is not in position to object to Ira testifying to those transactions that were offered by plaintiff.

The testimony discloses that Eliza Neel and John R. Neel were married July 21, 1915. Both had been previously married, and both had adult children by their previous marriage. They separated in 1927, and on April 13,

1929, in the district court for Lancaster county, Eliza Neel was granted a divorce and awarded a judgment for $4,000 permanent alimony. Eliza Neel died testate in December, 1929, and on January 31, 1930, Lolla Perry was appointed and qualified as administratrix with the will annexed, and on June 26, 1930, transcript of said judgment was duly filed in the office of the clerk of the district court for Red Willow county, upon which an execution was issued and duly returned unsatisfied. At the time of the marriage, John R. Neel owned a one-third interest in a property in Indianola, and a homestead right, the other two-thirds being owned by Ira E. Neel and W. Frank Neel, who were the only children of John R. This property was worth about $1,800. John R. Neel also owned in his own right three other lots in Indianola, and a farm of 232 acres near the town of Red Willow, which is referred to as the Red Willow property. All these properties were unencumbered. He also owned 16 shares of bank stock. On the 28th of December, 1915, John R. Neel traded all the Indianola lots to Jacob Thompson for two lots in Holbrook, known as the "hospital property." Eliza Neel, Ira E. Neel and his wife, and W. Frank Neel and his wife joined with John R. Neel in the conveyance to Thompson. The deed to the Holbrook property was made to John R. Neel. John R. Neel and his wife Eliza then moved to and lived in the Holbrook property until the year 1924, when John R. Neel and his wife Eliza deeded the Holbrook property to one James Carroll in exchange for a 90-acre farm near Bartley, which is designated as the Bartley property. By direction of John R. Neel, the deed from Carroll to the Bartley land was made to Ira E. Neel. There is doubt as to the admissibility of some of the evidence of Ira E. Neel as to how the consideration in part was paid for this exchange. The value of the Holbrook property in the exchange agreement was fixed at $6,000, and the value of the Bartley land at $9,-000. Appellant in her brief, however, concedes that Ira paid $3,000 to his father to pay the difference. She

claims, and the record shows, that Ira did not know the Bartley land was deeded to him until after the whole deal was closed. Ira now claims, and the trial court found, that Ira has an equitable lien on the land for the $3,000 and interest, less the rentals received. Ira, in his answer, does not claim a lien nor does he assert title, but insists that by implication he is entitled to the lien. In the testimony of John R. Neel, at the divorce hearing (and which was offered by plaintiff herein), he testified that he owned no property. Nowhere in the record is there any evidence that there was any agreement or understanding that Ira was to have a lien on the land for the money he advanced to his father to pay the $3,000 difference in the value of the two properties. Without some such agreement no such lien can attach. The mere fact that one loans money to another, wherewith to buy land, gives the lender no equity in the land bought therewith by the borrower. *Fike v. Ott,* 76 Neb. 439; *Boring v. Dodd,* 116 Neb. 366. In this latter case, this rule is given:

"Where there is no contract out of which a lien can grow, nor any duty of one party to give to another a charge or lien on real estate, no basis for such lien exists."

It is no more consistent with the facts in this case that by placing the title in Ira's name the father intended to give only the legal title, and this is further evidenced by Ira's claim that he paid the rentals to his father for several years. The fact that the deed was made to Ira was concealed from the wife, and, in view of the occurrences which will be later referred to about the 232-acre farm, and John R. Neel's denial at the divorce trial that he owned any property, we hold that the placing of the deed in Ira's name does not give him an equitable lien for money advanced or loaned to his father.

Ira claims that he was a part owner of the two homestead lots in Indianola, which were part of the lots traded for the Holbrook property. He joined in the deed, and from that time there seems to have been no attention paid to any share of the two homestead lots; and the value

of his one-third interest, subject to his father's life estate, would be very small, and it is properly inferable that, when the father took title to the Holbrook property, Ira relinquished whatever right he might have had in the Indianola homestead, and there is no evidence from which his share therein can be valued, so that claim cannot be asserted as giving rise to a lien on or title to the Bartley 90 acres. Furthermore, the fact that Frank does not claim any interest indicates that both Frank and Ira relinquished their small interest.

However, plaintiff in her brief, while insisting that there is no competent evidence that Ira loaned or advanced to his father $3,000 to pay the difference in the exchange, concedes that Ira helped his father in that transaction to the extent of $3,000, and is willing to have decree entered that John R. Neel owns two-thirds and Ira E. Neel one-third of the Bartley land, that being the proportionate share of the consideration paid by them. This is equitable and, under the evidence, it is all that Ira can justly claim. It is well known that land values have greatly depreciated since 1925, and to give Ira a lien with interest would in all probability result in plaintiff receiving nothing under the trial court's decree.

Ira testified that he paid his father the rent for the years 1925, 1926, and 1927, which plaintiff insists was incompetent evidence and is in fact inadmissible.

Several witnesses testified as to the rental value of the Bartley land for the years 1925 to 1931, inclusive. The lowest estimate by any witness other than Ira was $270 per annum and their estimates ranged from that to $360 per annum. According to Ira's testimony he received rentals in the aggregate sum of $794.19, an average of less than $200 for the years 1927 to 1931. The trial court fixed the annual rental at $225 per annum, but by a fair preponderance of the evidence it should be fixed at $300 per annum. These amounts for the years 1925 to 1931, inclusive, should draw interest at 7 per cent. from the 1st day of March following each succeeding

rental year. The appellant concedes that Ira should receive credit for the taxes paid, in the aggregate sum of $335.98, and interest at 7 per cent. from the date of each year's payment, which we therefore conclude should be allowed; but, as Ira holds title to one-third of the land, he of course will be entitled to one-third of the rents and liable for one-third of the taxes, so when the computations are made, as above directed, two-thirds only should be charged against Ira's share in the land.

The testimony concerning the 232-acre farm called the Red Willow property is that, on February 21, 1921, John R. Neel and wife Eliza conveyed this land to his son Ira for an expressed consideration of $20,000, and Ira gave his father two mortgages for purchase price, one of the mortgages was for $13,000 on the Red Willow land, and $6,000 mortgage on some other land owned by Ira. These mortgages bore interest at the rate of 6 per cent. per annum and matured in 10 years. John R. Neel executed releases of these mortgages December 29, 1921, and the releases were then duly recorded in the office of the county clerk. It is difficult to determine in some of Ira's evidence whether he was competent to testify as to particular parts. However, upon the circumstances attending the releasing of these mortgages, the plaintiff offered statements of John R. Neel that he received after the date of the releases the same amount from his sons as the interest on the mortgages, by which the inference is to be drawn that there was no consideration for the releases, it seems that Ira might testify as to the facts concerning such consideration. There was received in evidence a written contract signed by John R. Neel and his two sons, Ira and Frank, dated December 29, 1921, in which it is agreed that, in consideration of the releases of the two mortgages, Ira and Frank bound themselves to pay to their father the sum of $100 a month so long as he lived. Ira testified that he and his brother each paid $50 a month to their father during his life as the contract provided. It further appears that Ira deeded to Frank some

land as a consideration for Frank joining in this contract. There is no evidence in the record to indicate that John R. Neel ever had possession of the 232-acre farm after it was conveyed to Ira, nor that he paid taxes thereon or claimed any right or title to it, so that it definitely appears that the land was actually conveyed to Ira without any restrictions in favor of the grantors. In Ira's answer he alleges that, at the time of such conveyance, the land was not worth more than $10,000. It is a suspicious circumstance that Ira would purchase the land for $20,000, and, after deducting $1,000 that his father owed him, give mortgages for $19,000 to secure the balance of the purchase price, if the transfer was made as a *bona fide* sale. The father was at that time about 73 years of age, and, considering the probable duration of his life, the arrangement to release the mortgages was a very profitable one for Ira. Later, and in 1925, the placing of the title to the Bartley land in Ira's name, without a satisfactory reason why that was done, is another circumstance which points toward a plan to get the property out of the ownership of John R. Neel. The releasing of the mortgages was concealed from Eliza. She supposed the conveyance of land and the giving of the mortgages was a *bona fide* transaction. Ada Burton, her daughter, testified that Ira in her presence told her mother long after the date of the releases that he was paying the interest and would pay the principal as needed. Ira denies that statement. At the time of the releasing of the mortgages, the domestic relations between John R. and Eliza were pleasant. Trouble did not arise until about 1926 or 1927, which trouble culminated in a separation in this latter year. In 1921 John R. Neel owned the Holbrook property and some bank stock, besides the 232-acre Red Willow land. What became of the bank stock is in doubt. John R. Neel's testimony states that he gave that to Ira to pay a debt he owed Ira. With the property situation in this condition, and under the circumstances disclosed by the evidence, the proposition to be determined is whether the

transfer of the 232-acre farm to Ira and the subsequent release of the mortgages were made for the fraudulent purpose of depriving Eliza Neel of her marital rights. It seems, as above stated, that the conveyance to Ira and his giving of the mortgages were actual and *bona fide* transactions. The only thing that throws doubt on it is the statement in the answer that the property was then worth only $10,000. This in itself is not sufficient to impeach the sale. As to the fraudulent character of the releases of the mortgages, there is more doubt. The burden was upon the plaintiff to prove that the transaction was only colorable and was made for the purpose of depriving the wife of her marital rights. *Krull v. Arman,* 110 Neb. 70; *In re Estate of Sides,* 119 Neb. 314, 323. There is nothing directly indicating that John R. Neel at that time had any ill feeling towards his wife, and it may fairly be inferable from the evidence that Mr. Neel, with a proper fatherly regard toward Ira, felt that the payment of the $100 a month allowance would be satisfactory to him, and at the same time be a means of relieving Ira from a burdensome debt, and consented to and did release the mortgages without having in his mind the desire to injure his wife's expectations to inherit the property. Fraud is not to be presumed, but must be proved. Of course, it can be proved by circumstantial evidence, but the circumstances here do not appear sufficient to overthrow the transaction. There was a consideration for the releases, and, while the consideration appears to be less than the value of the mortgages, it was such as to satisfy Mr. Neel. He might be willing in entire good faith to accord to his son a better bargain than to a stranger.

There is considerable conflict in the decisions of several of the states as to the effect of transfer of property by a husband which operates to diminish the distributive share which a wife would otherwise have in his estate. There were but two cases in our state cited in the briefs which seem to have a bearing on that principle, and, in

the case of *In re Estate of Sides,* 119 Neb. 314, Judge Stewart states in the opinion, if the transfer of personal property by a husband during his lifetime is a mere device and means whereby he retains the use and benefit of the property during his lifetime and at his death seeks to deprive the widow of her distributive share, it is to be regarded as fraudulent as to the wife, and he cites the case of *Allen v. Henggeler,* 32 Fed. (2d) 69. In that case, Judge McDermott, in construing the Nebraska statute, gives the rule that the surviving widow must establish by a preponderance of the evidence that, in making gifts to his children, the father was actuated by bad motive and fraudulent intent and that the entire transaction was a mere device by which he sought to defraud her. The other Nebraska case is *Stansberry v. Stansberry,* 102 Neb. 489. Judge Cornish states the rule rather more broadly, but says: "The courts, however, as bearing upon the question of fraud (as to a transfer of real estate without consideration), take into consideration the fact that the conveyance is made to one's own children by a former marriage, or to other members of the family. Was the conveyance one which the person, under the circumstances, could and would make without intending to do or doing his wife a wrong?" These cases are not directly in point because in those cases the widow was seeking to set aside the transfers. Here plaintiff is asking to set aside the transaction to satisfy a judgment, but those cases are applicable because at the time of the transaction parties were sustaining the marital relation, and unless the fraudulent intent to deprive the wife of her rights existed at that time, the subsequent divorce does not change their respective rights.

Guided by those principles, we hold that transfer of the 232-acre farm near the Red Willow station, and the subsequent release of the mortgages, are valid as against plaintiff's claim, and the decree of the district court dismissing plaintiff's second cause of action is affirmed. As to the first cause of action, the decree of the district court

is reversed and the cause is remanded, with directions to enter decree on the first cause of action, adjudging that two-thirds of the 90-acre farm is the property of John R. Neel and the other one-third the property of Ira E. Neel, but that the share of Ira be charged with the rentals as above found and fixed, less taxes paid, and that the share of John R. Neel be sold to satisfy plaintiff's judgment.

AFFIRMED IN PART, AND REVERSED IN PART.